NOT FOR PUBLICATION                           [Docket No. 11]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

---

MARK LAPHAM,

    Plaintiff,

       v.

ACCENTURE, LLP, et al.,

    Defendants.

---

Civil No. 16-1394 (RMB/JS)

**OPINION**

APPEARANCES:

Lisa R. Marone, Esq.
Weintraub and Marone, LLC
801 N. Kings Highway
Cherry Hill, NJ 08034
    *Attorney for Plaintiff Mark Lapham*

James S. Richter, Esq.
Winston & Strawn, LLP
The Legal Center
One Riverfront Plaza, 7th Floor
Newark, NJ 07102
    *Attorney for Defendants Accenture, LLP, Accenture, Inc.,
    Accenture, LLC, Accenture United States Group Retiree
    Medical Plan, Accenture United States Benefit Trust,
    Accenture United States Pension Plan, Accenture United
    States 401(k) Match and Savings Plan*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon the Motion to

Dismiss filed by Defendants Accenture, LLP, Accenture, Inc.,

Accenture, LLC, Accenture United States Group Retiree Medical

Plan, Accenture United States Benefit Trust, Accenture United

States Pension Plan, and Accenture United States 401(k) Match

1

and Savings Plan (collectively, the "Defendants" or "Accenture") [Docket No. 11], seeking to dismiss Counts 3 to 7 of the Complaint brought by Plaintiff Mark Lapham (the "Plaintiff" or "Mr. Lapham") [Docket No. 1] as preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").  For the reasons set forth below, the motion will be denied as to Counts 3 to 6, and granted as to Count 7.

## I.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

Mr. Lapham was employed by NaviSys Holdings, Inc. from 1986 through August 30, 2006, when NaviSys was purchased by Accenture.  Compl. ¶¶ 17-18.  On August 25, 2006, Accenture sent Mr. Lapham a letter extending "an offer to join Accenture aligned with [its] Financial Services Operating Group within the Services Workforce," and "confirm[ing] the terms of [his] employment."  Compl. Ex. A [Docket No. 3] (the "Offer Letter"). The Offer Letter was signed by Brian A. O'Connell, a senior executive of financial services at Accenture, who Mr. Lapham alleges, upon information and belief, is either a fiduciary or agent of the various benefit plans offered by Accenture.

---

[1] The facts recited herein are derived from the Plaintiff's Complaint.  The Court must accept the facts alleged in the Complaint as true for the purpose of this motion to dismiss. See Bistrian v. Levi, 696 F.3d 352, 358 n. 1 (3d Cir. 2012). Additionally, as the Court writes primarily for the parties, it assumes the reader's familiarity with the facts and recites only those relevant to the decision herein.

Compl. ¶ 24.  The Offer Letter provides, in relevant part, as
follows:

> An extensive benefits program including medical,
> dental, life insurance, pretax reimbursement accounts,
> and other plans are available to you upon employment,
> subject to the standard eligibility requirements.
> Some benefits, such as the employer 401(k) matching
> contribution and the discretionary profit sharing
> plan, require a period of employment before you are
> eligible for participation.  You are eligible to make
> 401(k) contributions any time beginning with your
> first day of work.  If you choose to participate, once
> you meet the eligibility requirements for the matching
> contribution, Accenture will contribute fifty cents
> for every dollar you contribute to your 401(k) account
> up to contributions of 6 percent of your compensation
> (subject to the IRS annual limits).  You are permitted
> to roll over any prior 401(k) or other qualified plan
> amounts into the company's plan at any time.  <u>You will
> be credited for your service years at NaviSys Holdings
> Inc., for the purposes of eligibility and vesting</u>.

Compl. Ex. A (emphasis added).  As an alternative, Mr. Lapham

was offered sixteen months of severance payments from NaviSys.

Compl. ¶ 21.

Mr. Lapham chose to forgo the severance payments and,

instead, accepted the terms set forth in the Offer Letter and

became an Accenture employee effective September 1, 2006.

<u>Id.</u> ¶ 19.  Mr. Lapham alleges that his decision to accept

Accenture's offer of employment rather than the severance

package "was based largely in part on the promise that his years

at NaviSys would be credited towards the benefits offered to him

as an employee of Accenture," as set forth in the Offer Letter.

<u>Id.</u> ¶ 22.  He never received any of the plan documents or other

documents relating to Accenture's acquisition of NaviSys.
Id. ¶¶ 38-41, 50-52, 73.

After Mr. Lapham turned fifty-five years old in March 2015,
he applied for benefits under Accenture's medical, pension, and
401(k) plans (collectively, the "Benefit Plans").   Id. ¶ 28.
Each of his claims was denied due to a lack of requisite years
of service.   Id. ¶¶ 29-30.

The only eligibility prerequisites for benefits under
Accenture's medical plan are that the employee must be at least
fifty-five years old and "have at least 10 years of aggregate
full-time and/or part-time service with Accenture or an adopting
employer."   Id. ¶ 34.   Mr. Lapham was informed that his medical
plan claims were denied because "Accenture never certified
NaviSys as an employer under the Plan.   Consequently, Accenture
cannot allow for employment during the NaviSys period to count
for service credit under the Plan."   Id. ¶ 37.

Mr. Lapham's claim for benefits under Accenture's pension
plan was denied because he was not an "Eligible Employee" under
Section 2.2(m) of the pension plan, which excludes "service
employees who were employed by NaviSys, Inc. on August 31, 2006
(other than employees classified as Level 4 Senior Executives)."
Id. ¶ 53.   Similarly, Mr. Lapham's claim for a "true-up
match-up" under Accenture's 401(k) plan was denied based on
language in the 401(k) plan documents that excluded employees

who were classified as part of the Acquisition Work Group and who were transferred to a different employment category by the employer.  Id. ¶¶ 70-71.  Mr. Lapham, however, was unaware that he had been classified as part of the Acquisition Work Group or that he had later been transferred to a different employment category.  He instead relied upon the Offer Letter which indicated that he joined Accenture's Financial Services Operating Group within the Services Workforce.  Id. ¶¶ 73-74. Over the course of his employment with Accenture, Mr. Lapham contributed $15,500 to his 401(k) account that was never matched.  Id. ¶ 76.

Mr. Lapham appealed each of the claim denials and exhausted his administrative remedies.  Id. ¶¶ 42-45, 58-60, 77.  On July 16, 2015, he resigned from Accenture.  Id. ¶ 31.

On March 11, 2016, Mr. Lapham instituted this action by filing a Complaint, alleging that Accenture improperly denied his claims for benefits by failing to credit his years at NaviSys, as promised in the Offer Letter.  The Complaint sets forth the following counts: (1) ERISA – breach of fiduciary duty; (2) ERISA - equitable estoppel; (3) fraud; (4) breach of contract; (5) breach of the covenant of good faith and fair dealing; (6) promissory estoppel; and (7) breach of fiduciary duty.

5

## II.    <u>MOTION TO DISMISS STANDARD</u>

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u> at 663.  "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not suffice to survive a motion to dismiss.  <u>Id.</u> at 678.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district court should conduct a three-part analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim.  Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth.  Third, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (internal citations, quotations, and modifications omitted) (quoting Iqbal, 556 U.S. at 675, 679).

Rule 12(b)(6) requires the district court to "accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian, 696 F.3d at 358 n. 1.  Only the allegations in the complaint and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citing Chester Cty. Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).  A court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

Finally, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988).  As such, the permissible role of a plaintiff's opposition brief is merely to explain the "legal

theories . . . that [] find support in the allegations set forth in the complaint." See id.

III.     **LEGAL ANALYSIS**

Defendants seek to dismiss Plaintiff's state law claims (Counts 3-7) as preempted by ERISA, as they "relate to" the Benefit Plans covered by ERISA.  As a preliminary matter, the Court notes that Mr. Lapham does not oppose the dismissal of his state law breach of fiduciary duty claim (Count 7).  Plaintiff's Opposition Brief ("Pl. Opp. Br.") at 5 n. 1 [Docket No. 12]. Accordingly, this claim will be dismissed.

### A. ERISA Preemption

Congress enacted ERISA to comprehensively regulate employee welfare benefit plans that "through the purchase of insurance or otherwise, [provide] medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ."  29 U.S.C. § 1002(1). "ERISA also aims 'to provide a uniform regulatory regime over employee benefit plans' in order to ease administrative burdens and reduce employers' costs."  Nat'l Sec. Sys., Inc. v. Iola, 700 F.3d 65, 82 (3d Cir. 2012) (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004)).  In enacting ERISA, Congress intended "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying

with conflicting directives among States or between States and
the Federal Government." N.Y. State Conference of Blue Cross &
Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656
(1995).  Additionally, Congress sought to prevent "state courts,
exercising their common law powers, [from] develop[ing]
different substantive standards applicable to the same employer
conduct, requiring the tailoring of plans and employer conduct
to the peculiarities of the law of each jurisdiction." Kollman
v. Hewitt Associates, LLC, 487 F.3d 139, 149 (3d Cir. 2007)
(quoting Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 142
(1990)).

"To that end, ERISA possesses 'extraordinary pre-emptive
power.'" Giuffrida v. New Jersey Builders Statewide Benefits
Fund, 2016 WL 1223324, at *3 (D.N.J. Mar. 29, 2016) (quoting
Menkes v. Prudential Ins. Co. of Am., 762 F.3d 285, 293 (3d Cir.
2014)).  There are "[t]wo variants of ERISA preemption":
conflict or complete preemption under Section 502(a) and express
preemption under Section 514(a).  Menkes, 762 F.3d at 293.

### i. Conflict or Complete Preemption

"Congress intended for the causes of action and remedies
available under ERISA § 502 to be the exclusive vehicles for
actions by ERISA plan participants asserting improper plan
administration." Id. at 294 (citing Pilot Life Ins. Co. v.
Dedeaux, 481 U.S. 41, 54 (1987)).  Accordingly, "[a] claim is

conflict preempted by § 502 when it 'duplicates, supplements, or supplants the ERISA civil enforcement remedy.'"  Id. (quoting Aetna, 542 U.S. at 209).  Section 502 preempts a state law claim "if it provides 'a form of ultimate relief in a judicial forum that added to the judicial remedies provided by ERISA.'"  Barber v. Unum Life Ins. Co. of Am., 383 F.3d 134, 140 (3d Cir. 2004) (quoting Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 379 (2002)).  Put differently, "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." Aetna, 542 U.S. at 210.

### ii. **Express Preemption**

ERISA also provides for express preemption under Section 514(a).  This expansive, mandatory preemption provision provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute.  29 U.S.C. § 1144(a). "The term 'relate to' in § 514(a) is 'deliberately expansive.'" Iola, 700 F.3d at 83 (quoting Ingersoll-Rand, 498 U.S. at 138; Pilot Life, 481 U.S. at 46).  "'Relate to' has always been given a broad, common-sense meaning, such that a state law 'relates to' an employee benefit plan, in the normal sense of the phrase,

if it has a connection with or reference to such a plan."
Menkes, 762 F.3d at 293-94 (internal quotations omitted)
(quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97
(1983)).  "Under this 'broad common-sense meaning,' a state law
may 'relate to' a benefit plan, and thereby be pre-empted, even
if the law is not specifically designed to affect such plans, or
the effect is only indirect."  Ingersoll-Rand, 498 U.S. at 139
(citing Pilot Life, 481 U.S. at 47).

        While the term "relate to" is expansive and broad, it is
not without limits.  The Third Circuit in Iola noted that "the
Supreme Court cautions [that] its broad scope cannot 'extend to
the furthest stretch of its indeterminacy'; otherwise, 'for all
practical purposes pre-emption would never run its course.'"
700 F.3d at 83 (quoting Travelers, 514 U.S. at 655).  The Third
Circuit has also recognized that the term "connection with"
"supplies scarcely more content than the 'relate to'
formulation."  Id. at 83-84.

        Accordingly, in determining whether a claim is preempted,
the Third Circuit has directed courts to "look to 'the
objectives of the ERISA statute as a guide to the scope of the
state law that Congress understood would survive, as well as to
the nature of the effect of the state law on ERISA plans.'"  Id.
at 84 (quoting California Div. of Labor Standards Enf't v.
Dillingham Const., N.A., Inc., 519 U.S. 316, 325 (1997)).

"[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent.  The purpose of Congress is the ultimate touchstone."  Ingersoll-Rand, 498 U.S. at 137-38 (internal quotations and citations omitted) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985)).

Where the existence of an ERISA plan "is a critical factor in establishing liability" under state law and "the court's inquiry must be directed to the plan," the state law claim "relates to" to the plan and is preempted.  See Ingersoll-Rand, 498 U.S. 139-40; Menkes, 762 F.3d at 295 (holding that state law claims related to ERISA plan "because they are premised on the existence of the plan and require interpreting the plan's terms").

On the other hand, where the court need not engage in the "exacting, tedious, or duplicative inquiry that the preemption doctrine is intended to bar," but rather must make "only a cursory examination of the plan provisions," preemption does not apply.  See Iola, 700 F.3d at 85.  Moreover, where the state law claim "turns largely on legal duties generated outside the ERISA context," it is not preempted.  See id. (internal citations and quotations omitted); see also Jewish Lifeline Network, Inc. v. Oxford Health Plans (NJ), Inc., 2015 WL 2371635, at *3 (D.N.J. May 18, 2015) ("As broad as ERISA preemption may be, however, it does not foreclose a plaintiff from pleading a state law claim

based on a legal duty that is independent from ERISA or an
ERISA-governed plan.  Significantly, preemption is mandated if a
plaintiff is entitled to recover 'only because of the terms of
an ERISA-regulated employee benefit plan, and where no legal
duty (state or federal) independent of ERISA' exists. . . .
Moreover, a state law claim may have an independent legal basis
even if an ERISA plan is a factual predicate in the case.")
(emphasis in original) (quoting Aetna, 542 U.S. at 210).  "Some
state actions may affect employee benefit plans in too tenuous,
remote, or peripheral a manner to warrant a finding that the law
'relates to' the plan."  Shaw, 463 U.S. at 100 n. 21.
Accordingly, "the 'mere fact that an employee benefit plan is
implicated in the dispute . . . is not dispositive of whether
the [state law] claims are preempted.'"  Aetna Life Ins. Co. v.
Huntingdon Valley Surgery Ctr., 2015 WL 1954287, at *6 (E.D. Pa.
Apr. 30, 2015) (quoting Penny/Ohlmann/Nieman, Inc. v. Miami
Valley Pension Corp., 399 F.3d 692, 699 (6th Cir. 2005); citing
Iola, 700 F.3d at 85).

### B. **Plaintiff's State Law Claims**

Defendants urge the Court to dismiss each of Plaintiff's
state law claims as preempted by Section 514(a) and/or
Section 502(a) of ERISA.  As Mr. Lapham does not oppose the
dismissal of his state law breach of fiduciary duty claim
(Count 7), the Court will dismiss that claim.  Mr. Lapham,

however, vigorously opposes the dismissal of his remaining state law causes of action for fraud (Count 3), breach of contract (Count 4), breach of the covenant of good faith and fair dealing (Count 5), and promissory estoppel (Count 6).

Specifically, Mr. Lapham argues that these state law claims are not preempted by ERISA because they arise from duties generated independent of any ERISA plans, such as the terms of his employment as set forth in the Offer Letter and any other promises or representations made to him by Accenture. Therefore, the claims do not require the Court to analyze or interpret the ERISA plans' terms. Instead, Mr. Lapham contends, the Court must only consider the Defendants' representations and promises to him before his employment and whether those representations and promises were ultimately false or breached. Additionally, Mr. Lapham explains that, through his state law claims, he seeks damages in the form of lost severance pay and lost opportunities -- not ERISA benefits.[2]  He seeks these

---

[2] Accenture argues that Mr. Lapham's "demand for damages is non-committal and vague as he articulates no specific, ascertainable harm."  Defendants' Reply Brief ("Defs. Reply Br.") at 4 [Docket No. 13].  The Complaint simply sets forth that Mr. Lapham was "harmed and has sustained damage."  Compl. ¶¶ 94, 98, 102.  In his opposition brief, however, Mr. Lapham explains that his "common law claims seek damages for the lost severance pay, lost opportunities and other remuneration forgone by Lapham because he chose to become an employee of Accenture, LLP based on its misrepresentations."  Pl. Opp. Br. at 2.  He makes clear that his "damages resulting from the false representations and the breach of the promises set forth in the

damages in the alternative to the ERISA benefits sought in Counts 1 and 2 of the Complaint, in the event that the Court were to find that he is not entitled to such benefits under the Benefit Plans.  As such, resolution of the state law claims, according to Plaintiff, would not implicate Congress's concerns over the administration of ERISA plans.  Pl. Opp. Br. at 15-16.

In determining whether Plaintiff's state law claims are preempted by ERISA, this Court first notes that the parties agree that the Benefit Plans are governed by ERISA.  See Compl. ¶¶ 10, 12, 13; Defendants' Brief in Support of Motion to Dismiss ("Defs. Br.") at 1 [Docket No. 11-1].  Accordingly, the Court now considers whether the applicable state law claims "relate to" those plans, resulting in express preemption, and whether conflict preemption bars the Plaintiff's state law claims.  For the foregoing reasons, the Court finds that Plaintiff's state law claims are not expressly preempted under Section 514(a) or completely preempted under Section 502(a)(1)(B).

---

offer letter are NOT benefits under any plan covered by ERISA. Rather, Lapham's damages are his lost severance pay, and any lost opportunity by way of other employment separate and apart from Accenture, LLP that he did not pursue because he reasonably believed the representations and promises set forth in the offer letter." Id. at 16.  While a complaint may not be amended by the briefs in opposition to a motion to dismiss, a plaintiff is permitted to explain the legal theories supporting his allegations in the opposition brief.  See PepsiCo, 836 F.2d at 181.  That is what Mr. Lapham has done here.

In determining whether Mr. Lapham's state law claims are preempted by ERISA, the Court is guided by the Third Circuit's reasoning in Iola.  In Iola, the Third Circuit considered whether state law fraud claims were expressly preempted by ERISA.  In doing so, the court distinguished between alleged misrepresentations made after the ERISA plan's adoption and alleged misrepresentations made prior to the ERISA plan's adoption in an effort to induce participation in the ERISA plan. Iola, 700 F.3d at 84-85.  The Third Circuit found that the misrepresentations made after the plaintiffs adopted the ERISA plan were preempted as they had "a connection with" the ERISA plans in question, reasoning that:

> [t]o prevail on those claims, the plaintiffs would
> have had to plead, and the court to find, that the
> plans were in fact adopted.  The court would then be
> called on to assess [defendant's] representations in
> light of the plaintiffs' benefits and rights under the
> plans.  This type of analysis--concerning the accuracy
> of statements by an alleged (state law) fiduciary to
> plan participants in the course of administering the
> plans--sits within the heartland of ERISA. . . . We
> therefore conclude that the plaintiffs' common law
> claims are preempted to the extent they relate to
> [defendant's] conduct after he enrolled the plaintiffs
> in [the plan].

Id. at 84.

The Iola court then considered the following question: "do common law claims that [a defendant] misrepresented the structure and benefits afforded by an ERISA plan in order to induce participation in that plan 'ha[ve] a connection with' the

16

plan, such that they are preempted?"  Id.  The Third Circuit

found that such claims were not preempted.  Id. at 84-85

(collecting cases from other Circuit Courts of Appeals).  The

Third Circuit explained that "[d]isplacing claims of this

variety . . . 'would not further Congress' purpose in passing

ERISA.' . . . 'Holding insurers accountable for pre-plan fraud

does not affect the administration or calculation of benefits,

nor does it alter the required duties of plan fiduciaries.'"

Id. (internal citations omitted) (quoting Woodworker's Supply,

Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 992 (10th

Cir. 1999)).

     The Third Circuit continued:

    In our view, these sorts of claims rest on
    misrepresentations made about an ERISA plan before
    that plan's existence.  They are not premised on a
    challenge to the actual administration of the plan.
    To the extent that a reviewing court would need to
    examine the provisions of the plan in considering the
    claims, it would be only to determine whether the
    representations made by [defendant] regarding plan
    structure and benefits were at odds with the plan
    itself, or with the plaintiffs' understanding of the
    benefits afforded by the plans.  This is not the sort
    of exacting, tedious, or duplicative inquiry that the
    preemption doctrine is intended to bar.  To the
    contrary, that comparison requires only a cursory
    examination of the plan provisions and turns largely
    on legal duties generated outside the ERISA context.
    Nor do we think these claims strike at that area of
    core ERISA concern--funding, benefits, reporting, and
    administration--in which the use of state, rather than
    federal, law threatens to undermine the goals of
    Congress in enacting ERISA in the first place.

Id. at 85 (internal citations and quotations omitted).

As alleged by Mr. Lapham, the Benefit Plans are "merely the context in which a traditional state law tort [or breach of contract] occurred."  Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program, 2011 WL 2413173, at *8 (D.N.J. June 10, 2011) (citing Geller v. Cty. Line Auto Sales, Inc., 86 F.3d 18, 23 (2d Cir. 1996) (holding that state law fraud claim was not preempted where "[t]he plan was only the context in which this garden variety fraud occurred.")). Preemption is not appropriate in such cases.  Id.

"[A] state law claim may have an independent legal basis even if an ERISA plan is a factual predicate in the case." Jewish Lifeline Network, 2015 WL 2371635, at *3-4 (citing Travelers, 514 U.S. at 656).  Here, Mr. Lapham's state law claims seek to enforce legal duties that are independent of the Benefit Plans.  Instead, the claims assert legal duties that arise from the Offer Letter, which set forth the terms of Plaintiff's prospective employment with Accenture, and from any other representations and promises made by Accenture to Mr. Lapham in encouraging him to accept the offer of employment over the severance package.  Mr. Lapham's "right to recovery [under the state law claims], if it exists, depends entirely on" Accenture's representations and promises to him pre-employment, not the Benefit Plans themselves, making preemption inappropriate.  See Pascack Valley Hosp. v. Local 464A UFCW

18

Welfare Reimbursement Plan, 388 F.3d 393, 402 (3d Cir. 2004)
(finding that state law claim was not completely preempted under
§ 502(a)).

A cause of action is completely preempted when a plaintiff
"could have brought his claim under ERISA § 502(a)(1)(B), and
where there is no other independent legal duty that is
implicated by a defendant's actions." Aetna, 542 U.S. at 210
(emphasis added); accord Iola, 700 F.3d at 85 (no preemption
where claim "turns largely on legal duties generated outside the
ERISA context"); Bar-David v. Econ. Concepts, Inc., 48 F. Supp.
3d 759, 765-66 (D.N.J. 2014) (finding that state law claims are
not preempted where plaintiff "seeks to enforce duties that
Defendants allegedly owe based on attorney-client and fiduciary
relationships that existed outside of the Plan" and which "arose
before the implementation of the Plan and exist independent of
it"). Mr. Lapham's state law claims depend on legal duties
created by the terms of the Offer Letter and Accenture's
promises and representations, which are generated outside the
ERISA context. Accordingly, conflict or complete preemption
does not bar Mr. Lapham's state law claims.

The Court further finds Mr. Lapham's state law claims do
not "relate to" or have a "connection with" the ERISA plans,
such that express preemption is appropriate. It is irrelevant,
for purposes of the state law claims, whether Mr. Lapham is

entitled to benefits under the terms of the ERISA plans.
Instead, resolution of Mr. Lapham's state law claims turns on
the terms of his employment, as set forth in the Offer Letter,
and any promises or representations made to him by the
Defendants prior to his employment with Accenture.  In Menkes,
for example, the Third Circuit found that the state law claim in
question was expressly preempted by ERISA because it "is still a
claim that is about the benefits owed . . . [and] will require
reference to plan documents to determine what each policy
covers, and then examining [defendant's] claims administration
processing and procedures in light of the plan's contours."
762 F.3d at 295.  The Menkes court explained that "[w]here
liability is predicated on a plan's administration, ERISA
preempts state law claims."  Id. at 295-95.

Mr. Lapham's state law claims, however, are not a
"challenge to the actual administration of the plan."  Iola,
700 F.3d at 85.  Through the state law causes of action,
Mr. Lapham seeks damages as a result of Defendants' promises and
representations made to him before he elected to become an
Accenture employee and participant in the Benefit Plans, rather
than under the terms of the Benefit Plans themselves.  The Court
will be required to engage in, at most, a "cursory examination
of the plan provisions," rather than the "exacting, tedious, or
duplicative inquiry that the preemption doctrine is intended to

bar." Id.  Additionally, the Court will not be required to analyze, interpret, or enforce any terms of the ERISA plan in resolving these claims.

Accordingly, regardless of whether Mr. Lapham is entitled to benefits under the Benefit Plans, the facts as currently alleged establish that Accenture promised or represented to Mr. Lapham that, if he were to become an Accenture employee, his years at NaviSys would be credited to him for purposes of benefits vesting and eligibility, but that those years were not credited to him as promised.  Yet, Accenture could have promised Mr. Lapham anything to induce him to accept the employment offer rather than the severance package.  The fact that the allegedly breached promise or the alleged misrepresentation happened to touch on vesting and eligibility for ERISA benefits should not limit Mr. Lapham's ability to seek recourse.

The Sixth Circuit Court of Appeals considered a similar factual scenario in Thurman v. Pfizer, 484 F.3d 855 (2007).[3]  In Thurman, the defendant promised the plaintiff that he would be entitled to certain pension benefits after five years of employment, in an effort to induce the plaintiff to leave his

---

[3] Defendants argue that Thurman is entirely inapposite and distinguishable.  Defs. Br. at 8-9; Defs. Reply Br. at 3-4. While the Court recognizes that Thurman is neither binding on this Court or factually identical to the case at bar, it nonetheless finds the Sixth Circuit's opinion to be well-reasoned, relevant, and persuasive.

job and accept an offer of employment with the defendant

company.  The plaintiff accepted the employment offer, but was

not given the pension benefits he had been promised.  Id. at

858.  The Sixth Circuit succinctly explained that "Thurman was a

non-participant, who was induced to enter into employment with

Pfizer based on certain representations [related to an ERISA

plan], and who now seeks something that is clearly outside the

provisions of his benefit plan: what he gave up in reliance on

Pfizer's alleged misrepresentations." Id. at 863.  In

determining that the state law claims were not preempted, the

Sixth Circuit explained:

> What we have here is simply a case of a person who
> left his old employer based on promises made by his
> new employer.  These promises could have concerned
> anything--for example, an increase in wages, more
> vacation days, or free parking.  Here, these promises
> just so happened to concern retirement benefits.  We
> see no reason to bind employers to some promises used
> to induce acceptance of an employment offer, but give
> them a 'get out of jail free card' when their promises
> concern the scope of a plan governed by ERISA.
> Notably, allowing Thurman to proceed on his state-law
> claims does not threaten any of ERISA's objectives.
> We are not creating an additional enforcement
> mechanism under which individuals in Thurman's
> situation may collect ERISA plan benefits.  Rather,
> they may bring state-law claims for losses that are so
> far attenuated from an ERISA plan that preemption is
> simply unwarranted.

Id. at 864-65 (internal citations omitted).  This Court is in

agreement with the Thurman court and, accordingly, similarly

holds "that employers who misrepresent certain benefits provided

by ERISA-governed plans to prospective employees cannot later use preemption as an end-run around liability for fraudulent or innocent misrepresentations." Id. at 865.

Finally, in assessing whether Plaintiff's state law claims are preempted by ERISA, the Court considers whether preemption is consistent with congressional intent. See Ingersoll-Rand, 498 U.S. at 137-38. For the reasons already addressed above, in resolving the state law claims, the Court will not be required to interpret the Benefit Plans' terms, affect the administration of the Benefit Plans, or impose new duties on any plan administrators. Moreover, Mr. Lapham does not seek to recover ERISA benefits by way of the state law claims. Therefore, the Court finds that these claims do not "strike at that area of core ERISA concern--'funding, benefits, reporting, and administration'--in which the use of state, rather than federal, law threatens to undermine the goals of Congress in enacting ERISA in the first place." Iola, 700 F.3d at 85 (quoting Kollman, 487 F.3d at 149).

Congress sought to ensure that benefits plans and plan administrators "would be subject to a uniform body of benefits law." Travelers, 514 U.S. at 656. ERISA's preemption powers further that goal by preventing state courts from imposing "different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct

to the peculiarities of the law of each jurisdiction." Kollman,
487 F.3d at 149.  For the reasons articulated herein, the
Plaintiff's state law claims do not interfere with the
administration of ERISA plans or implicate ERISA's fundamental
concerns.  Accordingly, permitting the state law claims to stand
does not interfere with or contradict Congress's intent in
passing ERISA.

In sum, Mr. Lapham's state law claims arise from legal
duties independent from the ERISA plans and seek to recover
damages in the form of severance pay or lost opportunities, not
ERISA benefits per se.  The claims do not challenge the
administration of the Benefit Plans or seek to impose new duties
on plan administrators.  Rather, the claims turn on the
Defendants' representations and promises made to Mr. Lapham
before he became an Accenture employee and enrolled in the
Benefit Plans.  At most, the claims will involve a cursory
examination of the Benefit Plans and will not require the Court
to interpret the plans.  Plaintiff's state law claims affect the
Benefit Plans "in too tenuous, remote, or peripheral a manner to
warrant a finding that the [claims] 'relate[] to' the plan[s]."
See Shaw, 463 U.S. at 100 n. 21.  Under these circumstances, the
Court finds that Mr. Lapham's state law claims do not "relate

to" an ERISA plan and, accordingly, are not preempted by ERISA Section 514(a).[4]

**IV.     CONCLUSION**

For the foregoing reasons, the Defendants' Motion to Dismiss is denied, in part, and granted, in part.  The Motion to Dismiss is denied as to Counts 3 through 6.  The Motion to Dismiss is granted as to Count 7, as the Plaintiff does not oppose dismissal of this claim.  An appropriate Order shall issue on this date.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated:  November 8, 2016

---

[4] Although the Court finds that preemption is not appropriate, it nonetheless takes the opportunity to emphasize that the state law claims are asserted only in the alternative and in the event that it is determined that Mr. Lapham is not entitled to ERISA benefits under Counts 1 and 2 of the Complaint.  Pl. Opp. Br. at 15-16.  At a later time, if necessary, the Court may consider whether recovery under both the ERISA counts and the state law counts would result in a double recovery for a single injury.  At this juncture, however, Mr. Lapham is permitted to plead alternative theories of recovery.  See Iola, 700 F.3d at 85 (reversing district court's determination that certain state law claims were preempted and remanding for further proceedings, but noting that while "[r]etrial on these claims may be necessary[,] . . . the District Court may, on remand, . . . consider, among other issues, whether retrial on those claims would result in double recovery for a single injury.").